197 Ill. App.3d 521 (1990)
554 N.E.2d 476
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, Petitioner,
v.
ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD et al., Respondents.
No. 4-89-1000.
Illinois Appellate Court  Fourth District.
Opinion filed April 5, 1990.
Rehearing denied June 8, 1990.
*522 Gilbert A. Cornfield, of Cornfield & Feldman, and Jacqueline A. Kinnaman, of American Federation of State, County and Municipal Employees, both of Chicago, for petitioner.
Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor *523 General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.
R. Theodore Clark, Jr., and Thomas J. Piskorski, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, and Steven A. Veazie, of University of Illinois, of Urbana, for respondent Board of Trustees of the University of Illinois.
Edward B. Miller and James A. Spizzo, both of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, for respondents Board of Governors of State Colleges and Universities and Board of Trustees of Southern Illinois University at Carbondale and Edwardsville.
Clive Follmer, of Follmer & West, of Urbana, for respondent University Civil Service Merit Board.
Order affirmed.
JUSTICE STEIGMANN delivered the opinion of the court:
This appeal comes to us from a decision of the Illinois Educational Labor Relations Board (IELRB). The IELRB held the State University Civil Service System Merit Board (Merit Board) was not a joint employer with its constituent universities of the employees represented by the American Federation of State, County, and Municipal Employees (AFSCME). (University of Illinois Board of Trustees, 5 Pub. Employee Rep. (Ill.) par. 1035, No. 86-CA-0087-C (Illinois Educational Labor Relations Board, Feb. 2, 1989).) We conclude the IELRB's decision was supported by the manifest weight of the evidence and affirm its decision.
On September 16, 1986, the Merit Board proposed the deletion of section 250.50(8) of its rules relating to service bonus points. (80 Ill. Adm. Code § 250.50(8) (1985).) Service bonus points were points awarded to current university employees when they sought employment within the university in a different employment track than the one in which they were currently employed. Employees in this situation were required to compete with other prospective employees in an examination process. However, current employees were awarded bonus points based on their seniority. One additional point was given for each year of employment by the university up to a maximum of 10 points. These points provided an advantage to current employees when seeking to change their career track within the university system.
AFSCME sent the respondents, the Merit Board, the Board of Regents of the Regency University System (BOR), the Board of Governors *524 of the State Colleges and Universities (BOG), and the Board of Trustees of Southern Illinois University (SIU), letters demanding that the Merit Board and the universities bargain over the proposed rule change. All of the respondents refused to bargain over the proposed rule change. The Merit Board contended it was an independent third party and was not an employer for the purposes of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1701 et seq.). It argued it had no duty to bargain over its proposed rule change. Each of the universities individually responded with a number of contentions as to why they were not required to bargain, based on their individual circumstances. They were, however, united in arguing they were not required to bargain a change in the Merit Board rules since, although these rules were binding on them, they had no authority over the Merit Board with respect to its rules.
On October 20, 1986, AFSCME filed an unfair labor practice charge against the Merit Board and the University of Illinois as joint employers. On November 12, 1986, AFSCME amended its unfair labor practice charge to add the remaining respondents to the Merit Board and the University of Illinois. A public hearing on the proposed rule change was held by the Merit Board on November 18, 1986, and AFSCME raised its objections at this hearing. On April 6, 1987, the Merit Board approved a motion rescinding the seniority bonus point rule. The rescission was made effective on May 8, 1987.
The IELRB investigated the charge filed by AFSCME and issued a complaint for hearing on March 20, 1987. The parties stipulated to the facts and exhibits and requested the matter be presented directly to the IELRB. The IELRB issued its order on February 2, 1989. (University of Illinois Board of Trustees, 5 Pub. Employee Rep. (Ill.) par. 1035, No. 86-CA-0087-C (Illinois Educational Labor Relations Board, Feb. 2, 1989).) The IELRB rejected the assertion that the Merit Board and the other respondents were joint employers of the workers in question and dismissed the complaint as to it; AFSCME appealed this portion of the order, docketed No. 4-89-1000. The IELRB went on to find the universities' refusal to bargain over the rule change constituted a violation of the Act, and found the respondents had a duty to bargain with regard to the proposed change in the Merit Board rule, but that any provisions negotiated were subject to approval or rejection by the Merit Board; the universities appealed this portion of the order, Board of Regents v. Illinois Educational Labor Relations Board (1990), 202 Ill. App.3d 559.
 1 AFSCME's sole contention on appeal is that the IELRB incorrectly found that the Merit Board was not an employer or joint employer under the statutory definition or applicable case law. Courts may *525 not interfere with the discretionary authority vested in an administrative agency unless that authority is exercised in an arbitrary and capricious manner or the administrative decision is contrary to the manifest weight of the evidence. (Hardin County Education Association, IEANEA v. Illinois Educational Labor Relations Board (1988), 174 Ill. App.3d 168, 528 N.E.2d 737.) A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in the light most favorable to the administrative agency, the court determines that no rational trier of fact could have agreed with the agency's decision. Service Employees International Local Union No. 316 v. Illinois Educational Labor Relations Board (1987), 153 Ill. App.3d 744, 505 N.E.2d 418.
 2 The question in this case is whether the IELRB's application of the Act to the facts of this case is so unreasonable that the opposite conclusion, that the Merit Board is an employer or joint employer, is clearly evident. Central to the resolution of this question is section 2 of the Act. This section provides the following:
"As used in this Act: (a) `Educational employer' or `employer' means the governing body of a public school district, combination of public school districts, * * * public community college district or State college or university, and any State agency whose major function is providing educational services." Ill. Rev. Stat. 1985, ch. 48, par. 1702(a).
AFSCME has not argued that the Merit Board is a governing body, nor does it have any of the usual indicia of a governing body, i.e., it does not set educational policy, it does not select the faculty, or control the budgets of the universities which it serves. In fact, the Merit Board does not even actually select the university employees which are represented by the union here. Its function is to provide a civil service structure. It tests and provides the names of suitable applicants to the university for its selection. It also sets and oversees the general employment policies of the universities in regard to their nonacademic employees.
Since the Merit Board is not a governing body, to be an employer under the definition, it must be an agency whose major function is providing educational services. Under a common understanding of the term, the Merit Board provides no such services. Its services are related to education only in the sense that the organizations which its serves are universities. The actual function of the Merit Board would in no way be changed if it served any other State department or agency. To state it in terms of the statutory language, the Merit Board does not "provide educational services," but rather provides services to educational institutions. The language of the statute indicates it is the nature of the services, *526 rather than the party to whom those services are provided, which is determinative.
How, then, does the AFSCME argue the Merit Board is an educational employer? It relies on a number of cases cited in its brief which hold that, where one public body effectively controls the budget of another, the controlling body should be found to be a joint employer to make effective collective bargaining possible. AFSCME contends that because the Merit Board is comprised of a representative from each of the universities subject to its rules, there is so close an identity between them that they must be found to be joint employers.
 3 Our supreme court has recently considered the issue of joint-employer status in the context of public labor law in Orenic v. Illinois State Labor Relations Board (1989), 127 Ill.2d 453, 474-75, 537 N.E.2d 784, 794-95. There the court stated the following:
"As labor law has developed, largely in a Federal and private-sector context, the test for existence of joint employers has come to be defined as whether `two or more employers exert significant control over the same employees  where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment.' (National Labor Relations Board v. Browning-Ferris Industries of Pennsylvania, Inc. (3d Cir.1982), 691 F.2d 1117, 1124.) Relevant factors include the putative joint employer's role in `hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job.' [Citations.]"
In Orenic, the court was called on to determine whether the non-judicial employees of the circuit courts were employees of the judiciary, or whether they were jointly employed by the judiciary and the local county government. While noting the county exercised considerable fiscal control over the operations of the circuit courts, the supreme court found the circuit courts retained an inherent power over their employees and the power to compel the county to provide adequate facilities and staff for the courts. Based on this analysis, it found the county governments were not joint employers for the purposes of collective bargaining. While the current case lacks the constitutional separation of powers question which underlies Orenic, the test which the supreme court formulated to determine the status of a putative joint employer is equally applicable.
The evidence here shows the Merit Board has an important supervisory function in regard to hiring, firing, promotions, et cetera. The statutory *527 scheme charges the Merit Board with setting the general ranges of compensation for employees covered by the system. The Merit Board examines and certifies potential employees to create a pool of candidates from which the universities select employees. However, it is the universities that make the final selection of employees. The universities bargain for and recommend the appropriate ranges of compensation. In regard to promotions, the Merit Board, once again, merely selects appropriate candidates for the university to choose from. Clearly, the Merit Board has no responsibility for the day-to-day supervision of the employees or for discipline. While the Merit Board has some influence on the terms of employment, this influence in large part is limited to the approval of terms negotiated by the universities and the selection of employees in accordance with the statutory criterion and its own rules.
Section 36d of "An Act to create the State Universities Civil Service System" (Ill. Rev. Stat. 1985, ch. 24 1/2, par. 38b3), setting forth the powers and duties of the Merit Board, provides that it is the universities themselves which are authorized to negotiate with the employee representatives. The Merit Board is then to act on the recommendation of the universities resulting from these negotiations. (Ill. Rev. Stat. 1985, ch. 24 1/2, par. 38b3.) It is the legislative intent, as expressed in statute, that the universities are the parties to bargain with the employee representatives. No provision or authorization is made for negotiations between the Merit Board and any representative of the employees.
 4, 5 Simply because a reviewing court finds that an opposite conclusion might be equally as reasonable, or that it would have reached a different conclusion, is not sufficient grounds to set aside an agency's decision. In order to do so, the facts must indicate that the opposite conclusion is clearly evident. (Fagiano v. Police Board (1984), 123 Ill. App.3d 963, 463 N.E.2d 845.) Any merit to AFSCME's argument that the Merit Board exercises sufficient control of the terms and conditions of employment to warrant a finding that it is a joint employer falls far short of that required to show the IELRB's decision should be overturned. It cannot be said here that the contrary conclusion is clearly evident and, for this reason, the IELRB's determination is affirmed.
Affirmed.
LUND and SPITZ, JJ., concur.